Well, good morning, your honors, and may it please the court. My name is Kenneth Allen Klukowski, and I represent the United States of America. I'd like to reserve three minutes for rebuttal, please. The court below ... Thank you, sir. The court below abused its discretion by invoking Colorado River to partially stay this case and should be reversed in that the grant of the stay cannot be reconciled with this court's precedent. The United States invoked 1345 jurisdiction to file suit in the Eastern District of California over the California Environmental Quality Act, or CEQA, because the California State Water Resources Control Board had violated the United States' rights under that statute. In an abundance of caution, the United States later that day also filed a state court action as a purely protective measure because there was only a 30-day window in which to bring suit, and we had to ensure that if for any reason the district court did not adjudicate the case that the United States would still have a forum to assert its legal rights. The district court ... Yes, sir. Yes, your honor. Just a second. When you filed the state court action, you filed the claims regarding the violation of CEQA claims, right? If this is Judge Bey, I'm hearing that's correct, your honor. All right. Now, let me ask you this. Why didn't you also file the Intergovernmental Discrimination Act claim in the state court? Your honor, I'd like to answer that in two aspects, if I may. I think it applies to both sets of claims, but it's all the more stronger regarding intergovernmental immunity. It's first that Congress enacted Section 1345 because state courts may be too deferential to state agencies and state policies on matters that impact a federal agency's execution of federal policy as set forth in an act of Congress, and that's the U.S.'s concern here, your honor, both with regard to CEQA, but also with regard to all of the implicated federal interests, not just the intergovernmental immunity claim, where we would say that we most definitely have a right to a federal court adjudicating that matter. These are the constitutional prerogatives of the United States, and we would say that federal adjudication is all the more important if you look at the federal statutes that are being balanced in this case. You have NEPA, you have the ESA, you have hydroelectric water generation, we have the intersection of how to manage the fish and wildlife with the hydroelectric water generation, that in a matter involving both federal statutes and state statutes, where those two things are mixed, that we think not only is it important that the United States be able to adjudicate in federal court, but that in Section 1345, Congress unambiguously gave the right that the United States could insist to do so, and all the more true with regards to the constitutional claim. In fact, I would say, Your Honor, that's the entire- This Judge Rustani, are you arguing that somehow there's exclusive jurisdiction in the federal court? Not at all, Your Honor, but in fact, I would say that in this case, that this has always been part of federal jurisdiction. As our brief notes, this goes back to Section 11 of the Judiciary Act of 1789, not regarding exclusive jurisdiction, but regarding the right of the United States to insist to have all claims pertaining to the U.S. when we bring suit to be heard in federal court, and that extension- I'm Judge Rustani again. I wanna ask a, I know you can't see us, so it's hard for you to figure out when we wanna ask something. I'm just thinking of the practicality here. Just because the federal court can adjudicate everything, the state could adjudicate everything, and apart from the only claim that you didn't bring in state court, state court's gonna go ahead and resolve those federal matters, and if it's faster than the district court, it's going to bind the litigation in the district court on those state, on the causes of action that are in the state court. Is that not true? Your Honor, that would be true. If I could say, and may I please note for the court that I see that in addition, with the video being frozen, my clock is also frozen, so I apologize that I'm at something of a loss regarding my remaining time. Oh, excuse me, sir, you had 10 minutes and 13 seconds. Thank you, Your Honor, and I will duly keep track of that here. Thank you, sir. Your Honor, how I would respond to that, and I think this is critical here, is that if we're looking at Colorado River abstention, the countervailing interest that must be identified in order to weigh against the federal courts exercising federal jurisdiction, in order for that to be that narrow exception that the Supreme Court referred to from the almost unflagging duty of the federal courts, it's actually this court that emphasized that that countervailing interest must be identified not by the state, but by Congress itself in federal statute. I understand all that, but what's the answer to my question, which was a practical one? The answer to the practical question, Your Honor, is that this court's precedents make clear that merely having dual-track litigation and the fact that it would cause inconvenience is not by itself justification for abstention, that there must be- That's your legal answer, that's not the answer to my practical question. My practical question is that the state court chugs along and decides all those actions, including ones that implicate federal statutes, that if they get there first, that's gonna have collateral estoppel effects on the federal litigation, correct? That is correct, Your Honor. Thank you. Very good. If I may, the point that I'd like to drive home, and I'd like to correct a citation error in the brief as well, but that we think it critical that the lower court actually didn't unpack this aspect of the court's precedent that it was examining, is that this court held in Morris at 268 Fed Third at 706 and over to 707. And the correction I'd like to make is that on page 26 of our opening brief, we identified the Penn site as page 708. I apologize that that quote is in 706. And as that carries over to 707, in quoting the Supreme Court, this court in rejecting and reversing a district court's grant of abstention under Colorado River said, quote, Colorado River does not say that every time it is possible for a state court to obviate the need for federal review by deciding factual issues in a particular way, the federal court should abstain. As the Supreme Court has observed, such a holding would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the states. Rather, Colorado River stands for the proposition that when Congress has passed a law expressing a preference for unified state adjudication, courts should respect that preference. As the Third Circuit astutely observed, it is evident that the avoidance of piecemeal litigation factor is met as it was in Colorado River itself only when there is evidence of a strong federal policy that all claims should be tried in the state courts. It is the final- Can I ask another question? You are rolling along 80 miles an hour. I know you can't see us, but please try and be measured. So I could ask a question or my colleagues could? Okay, I wanna- We have eight Colorado factors. I take it your main argument is that the last Colorado River factor basically prevents us from affirming the district court. But, Your Honor, that is certainly part of our argument.  Okay, so what you're saying is not the main argument. Your Honor, I would say it's one of several. I would think that our foremost argument, the central part of our main argument is that this court's precedent in Moros is controlling in that because no federal statute has identified a policy as the McCarran Amendment did in Colorado River, explicitly saying that Congress consented to have state courts adjudicate the matter because there is no such federal policy contained in a federal statute that Colorado River abstention does not apply. All right, thank you. Yes, Your Honor. Beyond that, I would add that as Your Honor has asked about the factors that would weigh for or against abstention, certainly we agree with the district court on the factors where the lower court found that abstention would not be counseled for. Regarding the factors where the lower court believed that Colorado River was called for, we believe there would be several. I believe I've already addressed avoiding piecemeal litigation, though, of course, if the panel has any questions, I'm happy to answer that. But if I could briefly- Okay, well, let me ask you another question about your other answer. So your other answer is basically your main argument is because this is not a McCarran Act situation. Colorado River does not apply. Is that your bold statement? Your Honor, I would take that one step more broadly to say that it wouldn't have to be McCarran per se. It could be any variation thereof. Any federal policy reflected in federal statute signaling that Congress was assenting to state court adjudication of this matter that Colorado River would apply in any such situation, but absent such a statute, and there is no such statute here, the only federal policy preference that we have is the enactment of 1345, giving the United States the right to insist on federal court adjudication where the United States is a plaintiff. Well, there is no such similar statute here, but is there anything like the McCarran Act? It just seems to me the Colorado River has been applied more broadly than just the situation in Colorado River, so the question is, what are these kinds of statutes? Do we know what they are? Are they out there? Your Honor, I wouldn't have a comprehensive listing of any such statutes. I would focus on this court's precedent as establishing the law here, and I would note that the U.S. District Court for the Central District of California invoked that very point that I'm mentioning just last August, just several months ago, in holding that Colorado River applies when Congress identifies the countervailing policy. I think the question here, Your Honor, becomes not whether there is a countervailing policy that would counsel in favor of abstention, but rather the question is, who gets to decide whether there is a countervailing policy? Who gets to claim and articulate the countervailing policy? And there we would say that it's Congress that has to do so, and that the other side can point to no indication that the United States wanted, as was the case in McCarran, where the United States consents to the adjudication of these matters in state court. Instead, in a situation where both federal statutes and state statutes are implicated, as is the case here, that the United States wants to seek federal court adjudication there, and that Congress explicitly grants that right. You want to save the balance of your time? You're under a little less than two minutes. Yes, Your Honor, if I could just conclude with the statement that- You set up your time, whatever you want to do. No, I'm happy to reserve my time. Thank you, Your Honor. Very well. Mr. Johnson. Yes, good morning, Your Honors. Dylan Johnson, Deputy Attorney General, on behalf of the Dependents and Appellees California State Water Resources Cohort, and Board Chair Ewarth Esquivel, the Court respectfully requests that this Court affirm the District Court's decision staying the United States' pre-state law claims under the Colorado River Doctrine. And the central question under Colorado River is whether the case presents exceptional circumstances. And then central to that under the court's eight-factor test is the third factor- Could you kindly go a little bit slower, sir, because I don't get the last statement. The central question is what? Whether the case presents exceptional circumstances, warranties, and- Before you get there, I'd like to know, in all of our cases, well, at least many of them, to use language like all of the issues in the federal case. That's our street, all necessary issues, the holder, end of the litigation, and so on, suggest that granting a partial stay doesn't work under Colorado River. What's your best argument that a partial, as opposed to a complete stay, is lawful under our precedent, and the Supreme Court's precedent? Yes, Your Honor. So, as the District Courts, in this case, found, it's District Courts within the circuit and within other circuits have repeatedly applied partial stays and found them appropriate. They've distinguished the language that Your Honor is referring to on the basis that that is meant to refer to a complete disposition of, in this case, the state law claims. And the reason for that is when you have a case that presents the circumstances we have here, where the state law claims are present in both the state and federal action, but the federal action alone has a federal claim, and where that federal claim can be separated neatly from the state law claims and adjudicated without significant duplication of efforts or the risk of inconsistent judgments, the partial stay still serves the purposes of Colorado River because it increases efficiency by allowing the state court to handle the state law issues and the federal court to handle the federal court issue and not have to unnecessarily duplicate their issues. Counsel, with respect, I've only been on this court 15 years and I've handled a fair number of water cases. And the idea that any court would be efficient is somewhat laughable to me. What I am concerned about here is that when you have a partial stay, you've got two different courts trying to resolve issues that in many cases are substantially similar. What's the policy coming out of Colorado River that would permit that other than in a situation, for example, where there's forum shopping? I just don't see the efficiency argument. What am I missing? Well, Your Honor, as I was saying, I mean, the efficiency here is that the state court ends up adjudicating the state claims, which is better suited to handle. And in this case, because in this case, what we have are CEQA claims, which state courts handle with much greater frequency. And we have- You've got NEPA claims on the federal side. They're substantially similar. State court can handle that. Federal court can handle that. I just don't understand the argument that somehow state courts are better in this water area that we're talking about. One court is better than the other court for basically technically being able to handle a particular element of the claim. Why is one better than the other of handling the whole thing? I'm sorry, what was the last part of the question? Well, why is one court, meaning state versus federal, better at taking a piecemeal as opposed to handling the entire case? Well, again, obviously, as Your Honor stated in the question, our position is that the state courts do handle CEQA claims much more frequently. Yes, they share commonalities with NEPA, but fundamentally, CEQA is an extremely complex, inherently complex state of statutes. But what you're basically saying, if I understand you correctly, is that those dumb federal district judges can't possibly fathom the mysteries of CEQA, or that the state court can't possibly fathom the mysteries of NEPA, when in fact, we know that there are very capable judges in both courts. And I just, I don't see how bifurcating, except in a situation of foreign shopping, it provides any additional efficiency at all. It's just a race to the courthouse, isn't it? Well, Your Honor, again, I'm not claiming that federal judges are not capable of handling CEQA claims. I'm merely claiming that state courts address them much more frequently, and so are likely to have more familiarity with current state of the law. That being said, again, the efficiency that district courts have found here is in having the state courts address these issues separately, and the federal court address the federal issue, and not having to have the two courts addressing the exact same issues. Let's see, you seem to say that in this case, the federal claim is totally separate from the state claims. But it seems to me that some of the problems that arise in the state claims impact this claim of discrimination that's made in the federal side. You're gonna say there's absolutely nothing to do with those other claims? No, Your Honor. I mean, I cannot, as you point out, and I think as Judge Smith's questioning points out, due to the nature of water regulation, particularly in this area, where we're talking about in stream flow requirements being the core of these regulations, ensuring that enough water is maintained in the system, there is inevitably the possibility of push and pull, but the actual legal claim raised by the U.S., the U.S. is the only one that can raise that. It's unique to the U.S. No one else can raise anything in the nature of a discriminatory claim based on the federal constitution as the U.S. can. Right, but to decide whether there's any discrimination going on, you're going to have to address some of those other laws. And isn't the Colorado River concept that you're supposed to basically terminate in the litigation in the other courts? So you got one court handling everything. Again, Your Honor, the district courts that have distinguished that principle have found that when the district court, or rather the state court, is able to finally, definitively adjudicate and handle the state claims, again, when they can be separated without significant risk of duplication, that that factor is met. Because the state court is then finally adjudicating the state claims, and the federal court can adjudicate the federal claims. But it doesn't end the litigation about the subject matter. I mean, again, we're talking about water here. It's the lifeblood of the San Joaquin Valley, and indeed of us all. And I just, I don't see how you can pick this apart and realistically not create potential chaos. I mean, there are so many kinds of claims, such as the Endangered Species Act, for example, or various mineral law claims, or in the state now you've got the underground water depletage that's now governed by state law. I mean, it just, it's gonna become a morass, is it not, if we don't keep this in a single court, unless, unless there is forum shopping. What am I missing? You're correct. Generally speaking, that's correct, Your Honor. This, again, because of the nature of these regulations at issue, handling them within one court gets rid of the risk of duplicative or unnecessary litigation. And that's what the district court has done by sending these CEQA claims to state court, essentially. And we do have a real risk of inconsistent judgments on the CEQA claims, where other parties in the state court proceeding have raised substantially similar claims regarding the alleged defect with respect to the carryover storage requirements. However, the parties in the state court litigation cannot raise that same, the foundation of the IGI claim, the Intergovernmental Immunity Claim, which is treating the U.S. differently from everybody else to an unfair disadvantage. And I see my time is rapidly diminishing, so if I might- Yeah, go ahead. I just wanna address the U.S.'s main contention here today, which is that Section 1345 essentially provides it a special right of access, kind of a weight on the scale when it comes to the Colorado River Doctrine. And I would just say briefly that, of course, Colorado River itself was a 1345 case. And pointing to Moros again, this court found that in Colorado River, the Supreme Court, I believe it used the word, destroyed the notion that 1345 was in any way diminished by the presence of the McCarran Amendment. So essentially, Colorado River was a case in which 1345 was in full force and effect, and nevertheless, the Supreme Court found it appropriate in that case to not only stay, but dismiss the U.S.'s claims and relegate them to state court. Furthermore, as Judge Rastani's questioning points out, and the district court properly pointed out, the Colorado River Doctrine has been applied repeatedly to contexts that have no federal policy. And the U.S. in its brief also stated that it is not taking the position, which seems to be somewhat inconsistent with today, that only a federal policy can allow the application of Colorado River. Rather, the U.S. took the position in its briefing that you need exceptional circumstances, which is true, and we admit that. And to explain why this case is so exceptional, we have an extremely complex area of water quality control, or of state administrative regulations, which Judge Smith already touched on. We have the intertwining of all these parties. Currently, we have 12 cases in the state court proceeding coming from both sides of the aisle on this question, environmental and water users. And as I stated, they bring some claims. Some of those entities bring virtually the same claim as the U.S., thereby increasing the risk of unnecessary duplication of efforts and even conflicting judgments, which generally the judiciary would try to avoid. But doesn't that actually go to the point that I think I was making, which is if you have all of this in a single trial court, I mean, you folks are experts. You know this area. The environmental community knows this area. They don't really care, I don't believe, whether they're in federal court or in state court. They just want the opportunity to be heard. They all make their arguments. Some of them overlap, some of them don't. But I just, we have a bifurcated proceeding that the state law on one side and the federal, particularly when in the water resources area, there's enormous overlap, enormous, if you will, duplication. It's this federalism run amuck, in a way, because nobody seems to control it. It's just an ongoing, multi-decade fight. I'm having difficulty getting my head around the idea that somehow sending the state law claims and not terminating the entire case before the federal district court, sending the state law claim to the state court and continue with the federal claims in the federal court makes any sense under Colorado rules. What am I missing? Well, Your Honor, again, I would just state that our position is that the IGI claim here can be separately adjudicated. And therefore, we don't have that risk of duplicative work and inconsistent judgments with respect to that claim. Again, the CEQA claims are duplicated in significant part in the state claims. Other parties can and did bring those same claims. As I said, no one can bring the IGI claim. And it's also geared toward a different element of the plan, which is the salinity standard. Whereas this reservoir control issue under the environmental document is geared more toward the unimpaired flow. That being said, I would just also note that this court's decision in R.R. Street provides the better standard here. Because in Moros, what you had was a different factual scenario where it was just the U.S. proceeding with a federal claim in federal court and a state claim in state court. But what we have here, to use the court's language, in R.R. Street is a vastly more comprehensive state action designed to adjudicate all claims against the Bay Delta Plan amendments. And in that case, this court found that it was appropriate for the district court to find that that fact weighed significantly in favor of providing a stay under Colorado River. Can you give me an example of a state law that basically controls this environmental and water resource issue from the delta that is not somewhat duplicative of federal laws and statute covering exactly the same thing? Is there something just a standalone, like salinity, there are lots of federal cases about that, lots of cases about salmon, smelt, you name it, but they're duplicative. How do we splitting this up where the whole case isn't duplicative, how does that make any sense? Well, I'm sorry, I can't provide a concrete example of a state and federal law that, it's very- It's more corollary. Yeah, I mean, I can't on the fly sort of come up with something like that. But again, I would just emphasize that CEQA is fundamentally different from the U.S. Constitution. Of course, CEQA is designed- But it's not fundamentally different than NEPA. Correct, but of course, we don't have any NEPA claims. We're talking about- No, I understand that, but that's the corollary. Right. It makes a difference. But what we're talking about, I think here, is comparing, seeing if there's overlap between the CEQA claims and the IGI. And they arise under totally different bodies of law, is my point. And again, they can be adjudicated, our argument is they can be adjudicated separately. I see I'm out of time, so I'm- Let me just ask my colleague whether either has additional questions for the state. I do not. Okay, thank you. So I believe, Mr. Kwiatkowski, you've got a little time left. I got an hour and 56 seconds, as a matter of fact. You need to turn off your mic, turn on your microphone there. You're locked off there. Can you hear us? He's turned off his microphone. Yeah, I know that, I see that. I'm trying to get him to turn it on. Yeah, you can't see any hand signals. Right. He's got somebody there trying to help him. Okay, that's fine. Tommy, can you help him? I've contacted the technician and given him a sequence to unmute from his side. All right. He apparently is aware his mic is off, but gotta get it back on. There we are. There we go. Okay. Thank you. Mr. Kwiatkowski, you've got a minute and 56 seconds. Judge Smith, can you hear me, sir? We can, thank you. Okay, thank you, your honor. What is that big garbage can doing in back of you? I'm sorry, your honor? What is the big garbage can doing in back of you and what can we draw from that? I can change the video back. Oh, no, he's not that far. He's just saying something about the garbage can. Sorry. I'm starting to feel sorry for government counsel. Bad technology is trying to deal with a garbage can. Thank you, your honor. Your honor, there's probably a metaphor lurking around there somewhere. If I may, Judge Smith, I want to pick up, you actually raised the final key point I was going to raise, and that's regarding a partial stay. My friend admits that there are unique federal interests here. He also says that the state claims here are extremely complex, but we would say that they're not more complex than the federal statutory interests here as well, and that this case would be a particularly poor vehicle for this court to create new precedent saying that a partial stay is ever possible under Colorado River, since among other things, it will leave a federal constitutional claim on the table, which most certainly should be adjudicated by a federal court, and that that then, given that there would be dual-track litigation, this court is faced with an unfortunate choice here. One would be to say that either a state court should decide all these matters, including the federal constitutional prerogatives of the United States, or that there will be dual-track litigation, so there will be no conservation of judicial resources, and that that violates the very core rationale of Colorado River. So if there ever is an instance where a partial stay under Colorado River, and it is something to explore, this would not be the case to do so. Instead, we would say that the text of 1345, which grants jurisdiction, and except as otherwise provided by acts of Congress, and that's where we believe you reconcile the text of 1345 with Colorado River itself, where you had the McCarran Amendment, but you have no such explanation here. And to touch just the remaining factors, rule of decision, obviously that would be federal. We believe federal courts should be the ones to decide whether federal rights, constitutional rights, are adequately represented. And of course, as to whether there's complete parallelism, there's not. There's a federal constitutional claim. So a partial stay under Colorado River is not warranted here, and we urge that this court should reverse. Very well. Do either of my colleagues have additional questions for counsel? I do not. Okay. Thank you, gentlemen, for your arguments. Very helpful. The case of the United States versus Water Resources Control Board is now submitted, and the court stands in recess for the day. Thank you, Your Honor. Thank you, Your Honor. This court for this session stands adjourned.
judges: Bea, M. Smith, Restani